IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                       No. 22-MJ-0323-GJF

EDGAR RAUL ORDONEZ-RASCON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Edgar Raul Ordonez-Rascon's Opposed Motion to Request Pretrial Release (Motion for Release). (Doc. 27). Though the Government has not responded, it addressed the substantive issues, twice: first in its Response in Opposition to Defendant's Notice of Appeal (Doc. 10) and, second, in its Opposed Motion to Vacate the Detention Hearing (Motion to Vacate) (Doc. 26). Having considered the briefing, the Court denies the Motion for Release and affirms the Magistrate Judge's previous Order of Detention (Doc. 7).

*I.*    *Background*

Mr. Ordonez-Rascon is charged with conspiracy to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). (Doc. 1) at 1. He has been detained since March 2, 2022. *Id.* at 1–2. On that day, he was arrested by Border Patrol Agents with five undocumented aliens in the back seat of his SUV in Santa Teresa, New Mexico. *Id.* In a post-*Miranda* statement, Mr. Ordonez-Rascon admitted that he knew all five passengers were present in the United States illegally, that he was transporting them to El Paso, Texas, and that he expected to be paid for doing so. *Id.*

On March 9, 2022, Magistrate Judge Gregory J. Fouratt held a Detention Hearing, (Doc. 6), and entered a Detention Order, (Doc. 7). Judge Fouratt found, by a preponderance of the evidence, that "no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." (Doc. 7) at 2. Judge Fouratt gave numerous reasons but emphasized that "the weight of the evidence against the defendant is strong," that Mr. Ordonez-Rascon "lacks legal status" in the United States, and that a conviction would likely be "followed by deportation." *Id.* at 2, 3.

The next day, March 10, Mr. Ordonez-Rascon filed a Notice of Appeal of the Detention Order pursuant to 18 U.S.C. § 3145. (Doc. 10). On March 16, the Government filed a Response in Opposition to the Notice of Appeal. (Doc. 12). In it, the Government first contended that the Notice failed to meet § 3145's technical requirement than any challenge to a detention order be in the form of a "motion for revocation or amendment." *Id.* at 6. The Government next made procedural objections, arguing the Notice failed to "set forth any supporting grounds, authorities, or requests for relief" and failed to seek the position of the opposition in violation of the Federal Rules of Criminal Procedure and local rules. *Id.* at 7 n.1 and accompanying text (citing Fed. R. Crim. P. 47(b) and D.N.M. L.R.-CR. 47.1, 47.3, 47.7). The Government also argued the substance, urging that detention was proper because Mr. Ordonez-Rascon is a flight risk and no set of conditions could reasonably assure his appearance. *Id.* at 8–10.

Also on March 16, the Court set a hearing on the appeal for March 29. (Doc. 11). That hearing was not to be because on March 17, Mr. Ordonez-Rascon filed a Motion to Compel Pretrial Services to Conduct a Pretrial Service Interview, which the Court granted.[1] (Docs. 14,

---

[1] The Court notes that Pretrial Services did not conduct an interview with Defendant before the original detention hearing because defense counsel declined to allow one. *See* (Doc. 5) at 1 ("A

2

15). Then, on March 23, Mr. Ordonez-Rascon filed a Motion to Continue the Detention Hearing based on three reasons: (1) he needed the amended pretrial services report, (2) he needed a full 14 days to reply to the Government's Response to his Notice, and (3) he needed time to prepare his witnesses. (Doc. 18) at 2–3. The Court notes that the amended pretrial services report (Doc. 21) was filed March 28, before the hearing's date, and Mr. Ordonez-Rascon has not replied to the Government's response a month later. Nonetheless, the Court granted the Motion to Continue, (Doc. 20), and on March 31 the hearing was re-set for April 20, (Doc. 24).

On April 4, the Government filed its Motion to Vacate. (Doc. 26). The Motion renewed the same substantive arguments as the previous Response in Opposition to the Notice, but also added the argument that Defendant had failed to justify the need for an evidentiary hearing. *Id.* at 8 (citing D.N.M. L.R.-CR. 47.10 and *United States v. Williams*, 2021 WL 2953128, *1 (D.N.M. July 14, 2021)). Mr. Ordonez-Rascon did not respond to the Motion to Vacate, but on April 15, filed his Motion for Release from Custody which is the subject of this Memorandum Opinion and Order.

The Court notes that the Motion was filed just five days before the scheduled hearing and 36 days after filing the initial "Notice of Appeal."[2] In his previous Motion to Continue, Mr. Ordonez-Rascon argued that local rule 47.8, which requires parties reply within 14 days, entitled him to 14 days to reply and that that hearing's thirteen-day lead time ran afoul of the "requisite

---

Pretrial Services interview was not conducted at the advice of the Assistant Federal Public Defender.").

[2] The Court also notes that in the Motion for Release, defense counsel represents three different times that her client faces a "Fast Track" plea agreement for zero to six months, and likely for time served. (Doc. 27) at 4, 9, 14. The Court is mystified by the tactics of delaying a plea hearing and sentencing by over a month for this Motion. Surely it must be in a defendant's interest, if facing time served, to minimize the time served.

3

time to Reply." (Doc. 18) at 3. Nevermind that he never submitted that reply even after the continuance, here Mr. Ordonez-Rascon gave the Government but five days (and at most three workdays) to respond to his Motion.[3]

The Court further notes that Mr. Ordonez-Rascon never responded to the Government's Motion to Vacate. So, finding that the Motion for Release did not establish any factual dispute requiring an evidentiary hearing, the Court granted the Motion to Vacate. (Doc. 28). The Court now decides the Motion for Release on the briefings.

II.   *Legal Standards*

The Bail Reform Act "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (per curiam) (citing 18 U.S.C. § 3142(f)). At step one, the court must decide the "threshold" question whether § 3142(f) authorizes detention, *id.*, such as where the case involves "a serious risk that [the defendant] will flee," § 3142(f)(2)(A). If the court determines there is such a risk, then the Government must prove at the second step that there is "'no condition or combination of conditions' that 'will reasonably assure [the defendant's] appearance as required [as well as] the safety of any other person and the community.'" *Ailon-Ailon*, 875 F.3d at 1336 (quoting § 3142(f)). The Government bears the burden of proving such risk of flight by a preponderance of the evidence.[4] *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

---

[3] The Court is concerned this marks a pattern of last-minute or late filings by counsel. *See, e.g.*, *Hernandez-Agustin*, 21-cr-1886, (Doc. 35) (denying motion to permit Zoom testimony made on eve of hearing), (Doc. 39) at 2 (noting late notice of proposed expert), (Doc. 43) at 3 (finding motion for free process made two days before hearing untimely); *also, Morales-Quinones*, 22-cr-0074, (Doc. 36) at 3 (denying motion to extend motions deadline when made two weeks after deadline lapsed and after granting two previous extensions).

[4] The Government bears a higher clear and convincing standard to show dangerousness, but that is not at issue here. § 3142(f)(2)(B); *Cisneros*, 328 F.3d at 616.

The Court must consider various factors in making the two-step decision:

(1) the nature and circumstances of the offense charged…;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

§ 3142(g). If a court finds no conditions will assure the defendant's appearance, it "shall order the detention of the [defendant] before trial." § 3142(e)(1).

This Court's review of the magistrate judge's original detention order is *de novo*. *United States v. Ramos-Caballero*, No. 21-2098, 2021 WL 5176051, at *2 (10th Cir. Nov. 8, 2021) (citing *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003)).

III. Discussion

A. Detention Analysis

Judge Fouratt did not reason that Mr. Ordonez-Rascon is a danger to the public; rather he relied solely on the risk he would fail to appear under any conditions. (Doc. 7); § 3142(f)(2)(A). The Amended Pretrial Services Report now brings up dangerousness, however, given new information learned from the interviews that Mr. Ordonez-Rascon requested. (Doc. 21) at 4. And the Government raises the argument in its Motion to Vacate. (Doc. 26) at 11–12. So the Court addresses both issues below.

At the first step, the Court finds that Mr. Ordonez-Rascon poses a serious risk of flight and therefore is eligible for detention. § 3142(f). The Court makes this finding due to the weight

5

of the evidence on the criminal charge, Mr. Ordonez-Rascon's status as a removeable alien, his likely removal if convicted, his family ties to Ciudad Juarez, and his proximity to the border.

Mr. Ordonez-Rascon argues that nothing in his case "carries a presumption of detention" and that "a mere theoretical opportunity for flight is not sufficient grounds for pretrial detention." (Doc. 27) at 6 (citing *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986)).[5] He is right that the crime with which he is charged does not carry a presumption of detention. § 3142(e)(2). Nonetheless, risk of flight is sufficient reason for detention. § 3142(f)(2)(A). The Court is unpersuaded by the remaining argument. In *Himler*, the Third Circuit reasoned that "experience in adopting a false identity" was insufficient to infer a defendant was likely to flee. 797 F.2d at 158, 162. Here, Mr. Ordonez-Rascon resides in a city bisected by a permeable border with Mexico, has at least one sibling across that border in Ciudad Juarez, and faces likely removal. That is, he does not have mere theoretical opportunity: he has incentive and access.

At step two of the analysis, the Court, having considered the factors, finds that Mr. Ordonez-Rascon is a sufficient flight risk that no condition or combination of conditions will reasonably assure his appearance.

### 1. *Nature and Circumstances of the Offense Charged*

The first factor, the nature and circumstances of the offense charged, weighs in favor of pretrial detention. Mr. Ordonez-Rascon is charged with conspiracy to transport illegal aliens after being caught with five border-crossers in his vehicle for whose transport he expected to be remunerated. (Doc. 1). The charge evinces a disregard for the legal border, the laws regulating

---

[5] Defense counsel cites to the Third Circuit for this proposition. While out-of-circuit caselaw may, at times, have valuable persuasive effect, this Court reiterates to counsel that it is not bound by law originating outside the Tenth Circuit—especially on well-settled matters. *See United States v. Jose Manuel Gonzalez-Sierra*, 22-cr-0073-KG, Doc. 38 at 10 (emphasizing to counsel that this Court abides controlling Tenth Circuit precedent).

it, and the sovereign interests of this jurisdiction. The Court finds that this factor weighs on the side of increased flight risk.

### 2. *Weight of the Evidence Against Defendant*

The second factor, the weight of the evidence against Mr. Ordonez-Rascon, also weighs in favor of detention. The evidence is that Mr. Ordonez-Rascon was caught by border patrol with undocumented aliens in his vehicle and admitted to transporting them in a post-*Miranda* interview. (Docs. 1, 26). The evidence also shows that Mr. Ordonez-Rascon lacks legal status in this country. (Doc. 21) at 2. The Court finds that a conviction on this charge will likely result in deportation. In fact, both the Government and Pretrial Services point out that Mr. Ordonez-Rascon already has an immigration detainer pending against him. (Doc. 26) at 11; (Doc. 21) at 2. This likelihood provides Mr. Ordonez-Rascon with a high incentive to abscond to avoid the likely conviction, sentence, and forced removal.

Mr. Ordonez-Rascon argues that a potential Fast Track plea and light sentence takes away from any incentive to flee. The Court, however, is not concerned about his fleeing his sentence, but rather the conviction and the likely order of removal which will follow it.

Mr. Ordonez-Rascon also argues that under the Biden Administration's new policy guidance, he will likely not fall in a high priority category for removal. (Doc. 27) at 11–13 (citing Memorandum from Alejandro N. Mayorkas, Secretary of Homeland Security, *Guidelines for the Enforcement of Civil Immigration Law* (Sept. 30, 2021) ("Mayorkas Memo"), available at https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf, last accessed April 21, 2022; *accord* (Doc. 27) exh. 3). The Court is unpersuaded that Mr. Ordonez-Rascon would not fall under the "threat to border security" priority, *Mayorkas Memo* at 4, but even more so the Court is disinclined to predict how the Executive Branch may exercise its prosecutorial

7

discretion, *see id.* at 2 ("Foundational Principle: The Exercise of Prosecutorial Discretion…It is well established in the law that federal government officials have broad discretion…"). Additionally, as mentioned, Mr. Ordonez-Rascon already has a pending immigration detainer.

Given the incentive to abscond and avoid this Court's jurisdiction, the Court finds that the second factor weighs in favor of detention.

### 3. *History and Characteristics of the Person*

The third factor, history and characteristics of the person, is neutral. Mr. Ordonez-Rascon points to several factors which go in his favor. He has no criminal history, and so also has no history of failure to appear or contempt of court. (Doc. 27) at 1, 11. He has lived in the El Paso, Texas, community for 17 years, is gainfully (though perhaps unlawfully) employed, and has a partner and two daughters there for whom he is the sole economic support. (Doc. 27) at 10. Mr. Ordonez-Rascon argues that because of these family ties to El Paso, he wants to stay there and does not want to flee. (Doc. 27) at 11.[6]

---

[6] The Court notes its concern with two specific arguments made by Mr. Ordonez-Rascon. First, he argued that "[a]bsent [his] status as a removable alien, Pretrial Services would, almost certainly, not have recommended detention." (Doc. 27) at 11. The Court is concerned this is a misrepresentation of the Pretrial Services Report. Pretrial Services also, at minimum, noted that no suitable third-party custodian could be found, that Mr. Ordonez-Rascon has a history of cocaine use, that he has family ties to a foreign country, and that the charge was serious. (Doc. 21) at 4. Moreover, the Pretrial Services Report is not a binding judicial order, and Judge Fouratt did not rely singularly on Mr. Ordonez-Rascon's legal status in reasoning in favor of a detention order.

Second, Mr. Ordonez-Rascon argues that he "has an extended support network who are willing to assist in the case a secured bond is imposed." (Doc. 27) at 10. Again, the Court is concerned about contortion of the facts. The Pretrial Services Report says the opposite. Pretrial Services contacted both Mr. Ordonez-Rascon's partner and her brother-in-law and neither was willing to serve as a third-party custodian or give financial support. (Doc. 21) at 2. Neither was able to recommend any other family or friends who might be willing to assist. *Id.*

8

On the other hand, the Government points to factors which weigh against Mr. Ordonez-Rascon. Neither he nor his wife have legal status in the United States. (Doc. 26) at 10. Pretrial Services could find no suitable third-party custodian. (Doc. 26) at 11. According to his partner, Mr. Ordonez-Rascon has a history of abusing cocaine. (Doc. 26) at 11.

The Court acknowledges that Mr. Ordonez-Rascon has ties to the El Paso community. His desire to stay there, however, does not only cut in his favor. That desire is also at the root of the Court's concern that Mr. Ordonez-Rascon may rationally decide to abscond and move back and forth across the border as a fugitive rather than submit himself to a conviction and forced removal. Even Mr. Ordonez-Rascon himself admitted that his "immigration situation does create a risk that he will return to Mexico rather than face the charges in this case." (Doc. 27) at 11. The Court also notes that, according to the Pretrial Services Report, Mr. Ordonez-Rascon has at least one sibling living in Ciudad Juarez and that he is in contact with them. (Doc. 21) at 2. For all of these reasons, the Court finds this factor is at best neutral.

### 4. *Nature and Seriousness of the Danger if Released*

The fourth factor, the nature and seriousness of the danger to any person or the community that would be posed by the person's release, weighs in favor of Defendant. Judge Fouratt did not originally reason that Mr. Ordonez-Rascon was a danger to the public. (Doc. 7). Instead, his detention order relied exclusively on flight risk. (Doc. 7); § 3142(f)(2)(A). However, the Amended Pretrial Services Report that Mr. Ordonez-Rascon requested now addresses the issue, (Doc. 21) at 4, and the Government raises the argument in its Motion to Vacate, (Doc. 26) at 11–12.

Both Pretrial Services and the Government cite to three facts in favor of finding Mr. Ordonez-Rascon poses a danger: (1) that he was caught transporting illegal aliens, which is

9

inherently dangerous, (2) that his alleged crime may connect him with criminal organizations, and (3) that he has a history of using cocaine. *See* (Doc. 21) at 4; (Doc. 26) at 11–12.

Even accepting these facts as true, the Court is unpersuaded that Mr. Ordonez-Rascon poses a danger to others. Mr. Ordonez-Rascon has no history of violence and no criminal history. He is not accused of transporting aliens in an unsafe manner. He is not accused of currently using cocaine. For these reasons, the Court declines to find Mr. Ordonez-Rascon is a danger to the public. But, because the Court finds that Defendant poses a serious risk of flight, this fourth factor does not overcome the weight of the first three factors. The Court concludes, based on the factors, that Mr. Ordonez-Rascon is a significant flight risk.

### 5. *Possible Conditions Assuring Appearance*

Mr. Ordonez-Rascon offers that a secured bond and electronic monitoring are nonetheless sufficient conditions to assure his presence at future court dates. (Doc. 27) at 3. The Court is unpersuaded. Pretrial Services found that the Defendant has no family or financial support to post bond. (Doc 21) at 2. They also found no suitable third-party custodian. *Id.* Finally, given Mr. Ordonez-Rascon's proximity to the border, electronic monitoring would be an ineffective restriction on his movement. Accordingly, the Court finds not only that Mr. Ordonez-Rascon is a serious flight risk, but also that no condition or combination of conditions could reasonably assure his appearance.

### B. *Constitutional Challenge*

Mr. Ordonez-Rascon challenges his detention based on due process and equal protection. Mr. Ordonez-Rascon's due process argument seems to be essentially that he was denied

individualized consideration, as required in *United States v. Salerno*. 481 U.S. 739 (1987).[7] The Court assumes, given his reference to *Salerno*, that Mr. Ordonez-Rascon means to challenge his detention on procedural due process, not substantive due process, grounds.

Procedural due process is the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). In *Salerno*, the Supreme Court held that the Bail Reform Act's procedures and factor-based determination of pretrial detention were "extensive safeguards" sufficient to survive a procedural due process challenge. 481 U.S. at 752. This Court finds that those procedures were followed with fidelity in this case. Mr. Ordonez-Rascon had an initial detention hearing at which he was represented by counsel and after which the Magistrate Judge made written findings in support of detention. *See* (Docs. 6 & 7). Mr. Ordonez-Rascon availed himself of the right for an immediate appeal of that detention and, with this Memorandum Opinion, has now received lengthy consideration of the facts and factors in this case justifying pretrial detention. The Court finds no procedural due process violation here.

As for equal protection, Mr. Ordonez-Rascon does not claim to be a member of a protected class with the heightened protection of strict scrutiny. Instead, he claims to have suffered disparate treatment from similarly situated United States citizens in violation of the much lower rational review standard. (Doc. 27) at 20. Furthermore, Mr. Ordonez-Rascon does not appear to challenge the constitutionality of the Bail Reform Act generally but makes an as-applied challenge to his detention. *Id.* Mr. Ordonez-Rascon supports his argument with data purporting to show that in the last year in the Las Cruces courthouse, 95% of undocumented

---

[7] The Court notes that Mr. Ordonez-Rascon referenced *Salerno* by name but did not provide a proper citation to it. It is found at 481 U.S. 739 (1987).

aliens with no criminal history were detained pre-trial, while only 6% of U.S. citizens with no criminal record were detained pre-trial. *Id.*

To make a viable equal protection claim, Mr. Ordonez-Rascon must first "make a threshold showing that he was treated differently from others who were similarly situated to him." *Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)). If he makes such a showing, then the Court must apply a rational basis review to his detention decision because Mr. Ordonez-Rascon is not part of a suspect class. *Id.* Under the rational basis standard, Mr. Ordonez-Rascon's claim fails "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

Mr. Ordonez-Rascon cannot state an equal protection claim because he has not shown that he has been treated differently than others similarly situated. In the first instance, he makes no specific factual allegation related to his detention determination. Short of arguing that this Court has an explicit and consistent policy which discriminates on the basis of immigration status, Mr. Ordonez-Rascon's invocation of aggregated past decisions does not bear on an analysis of his individual detention determination. This Court directs its attention to Mr. Ordonez-Rascon's detention determination and not to the data of the Court system writ large.

Second, even accepting the data presented, it fails to prove that Mr. Ordonez-Rascon is similarly situated to or treated differently than any of the cases composing the data set. The data is aggregated and presented to show that immigration status is the determinative classification, but each detention decision is a matter of individualized determination constituted of many factors (and made by one of eight different judges). Each individual determination making up

the data set may have been affected by myriad factors not isolated or distinguished in the data presentation. The Court cannot discern to whom Mr. Ordonez-Rascon is similarly situated or in what ways he has been treated differently. Moreover, the Court is unpersuaded that Mr. Ordonez-Rascon is similarly situated to U.S. Citizens who lack a criminal record. U.S. Citizens do not face forced removal post-conviction.

Third, Mr. Ordonez-Rascon's claim rests on the assumption he has only been detained because of his lack of legal status. As addressed at length, Mr. Ordonez-Rascon has been detained for numerous combined reasons, including: the seriousness of the offense charged, the weight of the evidence against him, his likelihood of deportation, family ties to Ciudad Juarez, proximity and access to Ciudad Juarez, his desire to see his family in El Paso, and the incentive to cross the border undetected rather than be forcibly removed.

For these threshold reasons, Mr. Ordonez-Rascon's equal protection challenge fails.

The Court, therefore, denies the Motion for Release and orders that Mr. Ordonez-Rascon remain in the Custody of the United States Marshal pending trial.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE